925 F.2d 1458
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Nicholas VINCENT, Defendant-Appellant.
 No. 90-5671.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1990.
Decided Feb. 20, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Richard C. Erwin, Chief District Judge. (CR-89-247-WS)
 David Robert Tanis, Winston-Salem, N.C. (Argued), for appellant, David F. Tamer, Winston-Salem, N.C., on brief.
 Richard S. Glaser, Jr., Assistant United States Attorney, Greensboro, N.C. (Argued), for appellee; Robert H. Edmunds, Jr., United States Attorney, Benjamin H. White, Jr., Assistant United States Attorney, Charles P. Francis, Assistant United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER and CHAPMAN, Circuit Judges, and DAVID C. NORTON, United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Thomas Nicholas Vincent appeals his conviction based upon a contest of the district court's order denying his motion to suppress evidence obtained during a search of his residence. We find no error in the district court's decision that the defendant voluntarily consented to the search in question and affirm.
 
 
 2
 The evidence which the defendant seeks to suppress was obtained on October 17, 1989 by officers of the North Carolina State Bureau of Investigation and the Winston-Salem Police Department. At approximately 10:30 a.m. on that date, Senior Agent Steven G. Porter and Detective Russell Taylor arrived at the front door of the defendant's residence in Winston-Salem and identified themselves when the defendant came to the door. The officers' guns were not drawn and remained out of sight at all times. The officers asked the defendant if they could speak with him and he responded by inviting them into an office located outside the house but only a few feet from the front door thereof.
 
 
 3
 The exact nature of the conversation that followed was the subject of dispute in the suppression hearing held before the district judge. All of the parties agree, however, that following this conversation, the defendant led the officers through his house and down into the basement, where he showed them rooms of growing marijuana plants. The authorities subsequently seized over thirty-one pounds of marijuana. The defendant was arrested and indicted on one count of possessing marijuana with the intent to distribute and one count of unlawfully manufacturing marijuana in violation of 21 U.S.C. Secs. 841(a)(1) & (b)(1)(B)(vii).
 
 
 4
 Following the defendant's arraignment and plea of not guilty on both counts, he filed a motion to suppress all evidence obtained as a result of the search of his residence, pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the fourth and fourteenth amendments to the United States Constitution. His main contention was that the search was illegal in that it was conducted without a warrant and based on consent obtained by coercion and deception. After holding a hearing on this motion and considering testimony from the defendant and the two officers, the district court found that the defendant's consent was freely and voluntarily given. Pursuant to a plea agreement, the defendant then changed his plea to guilty on the unlawful manufacture count of the indictment and was given a sentence that included a sixty month term of imprisonment.[1] The execution of this sentence was stayed pending appeal of the court's denial of the motion to suppress.
 
 
 5
 The only question presented on this appeal concerns the voluntariness of the defendant's consent to the search. While a warrantless search pursuant to a valid consent is constitutionally permissible, Schneckloth v. Bustamonte, 412 U.S. 218 (1973), the government bears the burden of proving that the defendant freely and voluntarily gave his consent to the search, "uncontaminated by any duress or coercion, actual or implied." United States v. Morrow, 731 F.2d 233, 236 (4th Cir.), cert. denied, 467 U.S. 1230 (1984) (quoting United States v. Vickers, 387 F.2d 703, 706 (4th Cir.1967), cert. denied, 392 U.S. 912 (1968)).
 
 
 6
 The defendant alleges that several specific aspects of his encounter with the officers constituted coercion and deception, and thus support his contention that his consent was not freely and voluntarily given. He first argues that the two officers coerced his consent by confronting him in his own home wearing police identification jackets and bullet-proof vests, and telling him that one officer would remain in his home if he required them to go and seek a warrant. The defendant testified that he perceived these actions as "a threat." The defendant's second argument is that his consent was obtained on the basis of the officers' "guarantee" that his wife would not be arrested if he consented to a search. The defendant alleges that this representation was not only deceptive, but also constituted an implied threat to arrest his wife if he did not consent to the search. A third argument of the defendant is that he was deceived by the officers' misrepresentation of the strength of their evidence against him and the ease with which they could obtain a search warrant. More specifically, he claims that the officers told him that they knew marijuana was being grown in his house, that they had probable cause to conduct a search, and that they would have no trouble obtaining a search warrant.
 
 
 7
 The government disputes this account and relies upon the testimony of Agent Porter and Detective Taylor to meet its burden with regard to the voluntariness of the defendant's consent. According to this testimony, the conversation in the defendant's office began with the officers informing him that they had information indicating that implements for growing marijuana and, in particular, a growing light system, were on the premises. The officers never, in their account, claimed to have probable cause and never said that one of them would remain in the defendant's home if the other had to go and seek a warrant. In fact, they viewed the defendant as free to leave or order them to do so up until the discovery of the marijuana in the basement. The officers, according to their testimony, told the defendant that they had no search warrant and that, while they could go and apply for one, they would prefer to have his cooperation and consent. The defendant allegedly responded by inquiring as to the source of the officers' information and asking at several points, "[I]f I show you what you are looking for, will you give me the name of the person or the person that provided that information to you?" Agent Porter agreed to this request.[2] The defendant, the officers further testified, then asked, "[I]f I show you what you're looking for, are you going to arrest me and take me out in handcuffs?" The officers responded that they would not handcuff him, would advise the District Attorney of his cooperation, and would request that the magistrate judge allow him to sign his own bond.[3] Finally, the officers' testimony indicated that they made no guarantee concerning the arrest of the defendant's wife. When the defendant expressed concern about what would happen to his wife, Agent Porter responded by saying, "I'm not concerned with your wife at this time."
 
 
 8
 The conflicting testimony of the defendant and the officers was fully presented to the district court, which decided to credit the testimony of the officers that the consent was freely and voluntarily given. In cases such as this, where a judge makes a finding on the basis of oral testimony presented to him at a suppression hearing, we have been particularly cognizant of the district court's superior opportunity to observe the witnesses' demeanor and evaluate their credibility. See United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990). We are bound by the district court's finding unless it is shown to be clearly erroneous. See United States v. Gordon, 895 F.2d 932, 938 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (1990); United States v. Bethea, 598 F.2d 331, 335 (4th Cir.), cert. denied, 444 U.S. 860 (1979). With this in mind, we find no error in the district court's rejection of the defendant's factual allegations of coercion and duress.
 
 
 9
 The testimony of the two officers supported the finding that the defendant's will was not overborne in this particular case. The mere presence of the officers in the defendant's office at his own invitation did not rise to the level of coercion in the absence of other coercive words or acts. See United States v. Peterson, 524 F.2d 167, 178 (4th Cir.1975), cert. denied, 423 U.S. 1088 (1976). The officers in this case did not display their weapons or misrepresent the reason for their presence at the defendant's residence. They did not indicate to the defendant that he must speak with them, that he was not free to leave, or that he could not order them to do so. Indeed, he retained this freedom up until the discovery of the marijuana in his basement. The defendant's consent, furthermore, cannot be construed as an acquiescence to a claim of lawful authority, see Bumper v. North Carolina, 391 U.S. 543 (1968), because the officers did not claim to have a warrant or probable cause to conduct a search. They merely stated that they could go and apply for a warrant, a statement that has been repeatedly found non-coercive. See, e.g., United States v. Stallings, 810 F.2d 973, 976 (10th Cir.1987); United States v. Raines, 536 F.2d 796, 801 (8th Cir.), cert. denied, 429 U.S. 925 (1976); United States v. Boukater, 409 F.2d 537, 538 (5th Cir.1969). Finally, the officers' statements disclose no promise or guarantee that the defendant's wife would not be arrested. The defendant, therefore, could not reasonably have inferred a threat to arrest her only if he did not consent to the search. In light of the officers' testimony and the totality of the circumstances in this case, we are of opinion that the district court's finding of fact as to voluntariness was not clearly erroneous.
 
 
 10
 We conclude, in short, that the district court did not err in crediting the testimony of the officers and in finding that this testimony established that the defendant's consent was freely and voluntarily given.
 
 The judgment of the district court is
 
 11
 AFFIRMED.
 
 
 
 [1]
 We note in passing that the description of the nature of the offense in the judgment may not agree with the description of the count number therein. No issue is made of that at this time, however
 
 
 [2]
 Agent Porter testified that after the defendant showed the officers the marijuana in the basement, he did in fact tell the defendant who had provided the officers with their information
 
 
 [3]
 The defendant and Agent Porter testified that the defendant was not, in fact, handcuffed when he was arrested and taken from the house